CHRISTOPHER J. CANNON, State Bar No. 88034
Sugarman & Cannon
44 Montgomery Street, Suite 2080
San Francisco, CA 94104-6702
Telephone: 415/362-6252
Facsimile: 415/677-9445

Attorney for Defendant Jose Jesus Martinez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-07-00793 CW |
| Plaintiff, ) | SENTENCING MEMORANDUM |
| v. ) | |
| JOSE JESUS MARTINEZ, ) | |
| Defendant. ) | |

I.  **INTRODUCTION**

Jose Jesus Martinez is a 34-year-old man who will be in custody for the next ten years of his life. Ten years in prison is more than enough time to satisfy all of the factors set out in 18 U.S.C. § 3553. Upon his release, he will be 44 years old and the probability of recidivism will be drastically reduced. The activities leading to the conviction in this case are those of a low-level drug user and minor dealer who was in the drug business in an attempt to take care of his family. Under these circumstances any sentence of more

SENTENCING MEMORANDUM

than 10 years would be grossly disproportionate to the conduct that brings him before this Court.

## II.   A DOWNWARD DEPARTURE IS APPROPRIATE IN THIS CASE

A downward departure is appropriate in this case because Mr. Martinez's classification as a career criminal grossly overstates the likelihood of recidivism in this case. Unlike most career offenders, Mr. Martinez has the bare minimum of two convictions that qualify him for career offender status. The first of those convictions is almost beyond the 15-year time period for qualification as a career offender.

Under the sentencing guidelines, the role prior convictions play in sentencing is presumptive, not conclusive. In United States v. Reyes, 8 F.3d 1379 (9th Cir. 1993), long before Booker[1], the District Court departed downward from a career offender guideline range of 210 to 262 months to a 33-month sentence on the ground that the career offender sentencing range overrepresented "the relative lack of seriousness of the offenses and history that put him into career offender status." United States v. Reyes, 8 F.3d at 1387. The Ninth Circuit approved[2] the departure even though the illegal alien defendant's criminal history included six prior convictions, resulting in a criminal history category of V.

In affirming the District Court's grant of a downward departure of more than 14 years (177 months) despite the defendant's career offender status, the Reyes Court

---

[1] United States v. Booker, 543 U.S. 220 (2005).
[2] The case was remanded so that the District Court could articulate the reasons for its departure.
SENTENCING MEMORANDUM

recognized, even before Kimbrough v. United States, 128 S.Ct. 558 (2007), and Gall v. United States, 128 S.Ct. 586 (2007), the established principle that a downward departure is permissible under the guidelines and Ninth Circuit authority. United States v. Reyes, 8 F.3d at 1383 (citing United States v. Lawrence, 916 F.2d 553 (9th Cir. 1990)). A downward departure is also warranted if a mitigating circumstance is present that the Sentencing Commission failed to take into account *"to a sufficient 'degree'"* (Id. at 1385 (citing 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0) (emphasis added)), or if a combination of factors render the presumptive guideline sentence excessive. United States v. Cook, 938 F.2d 149, 153 (9th Cir. 1991).

The Reyes Court departed based upon the grossly disproportionate effect some criminal records and offense conduct can lead to under the guidelines:

> On this view, the problem is not that the Commission did not take into consideration the relationship between quantity and penalty, but that it did not adequately do so because it did not focus sufficiently on the resulting disproportionate punishment accorded career offenders in the same category.

Id. at 1385.

In other words, some guideline categories impose virtually the same punishment on defendants with widely varying criminal histories. By giving like punishment to offenders with unlike offenses and/or widely varying criminal histories, some offenders receive punishment disproportionate to their criminal conduct.

Reyes discusses the tension between two key aspects of the guidelines: (1) the fundamental principle of proportionality; and (2) the emphasis on categories, not

SENTENCING MEMORANDUM

individual cases, in an aggregate sentencing system. Proportionality requires that offenders receive "appropriately different sentences for criminal conduct of differing severity." Id. at 1385 (quoting U.S.S.G. § 1A.3 (introductory comment)). As the Reyes Court noted, proportionality is one of the three principles upon which the guidelines are founded. Id.

In some cases such as this, this principle of proportionality can be undermined by the aggregate nature of the guideline system unless a downward departure is granted.

The guidelines contain an extensive set of rules for grouping individual offenders together in final categories, and a table or grid that assigns a sentence range for all members of these various final categories. This aggregative approach, aimed at decreasing disparity in sentencing, carries with it the danger that because an offender's sentence results from a grouping, unique characteristics attaching to that offender are not credited and the presumptive sentence may be disproportionate to the nature of the offender and his or her offense conduct. In a penetrating critique of aggregative sentencing systems, a prominent author concludes:

> [S]entencing guidelines reflect a larger movement in legal and social thought. These guidelines also mark a changed attitude toward sentencing – one that looks to collections of cases and to social harm rather than to individual offenders and the punishments they deserve. The army that America is marching into its prisons and jails may merit incarceration, but these defendants deserve sentences based on more than rough aggregations and statistical averages. They and we deserve sentences based on the circumstances of their cases.

Alschuler, The Failure of Sentencing Guidelines: A Plea For Less Aggregation, U. Chi. L.

SENTENCING MEMORANDUM

Rev. 901 (1991) (cited in Reyes, 8 F.3d. at 1385 n. 14).

The Reyes Court acknowledged that this tension between proportionality and aggregation is "an appropriate concern to be considered when deciding to depart." Id. at 1385 n. 14.

Thus, the moral of Reyes is that because some guideline categories clump together and thereby impose much the same sentence on offenders with widely different criminal histories and offense conduct, the sentencing court should consider a downward departure for defendants whose history and conduct are less than the average defendant with the same criminal history.

This case is a good example of the problems which result from an aggregative sentencing system and demonstrates why the downward departure is needed. Jose Jesus Martinez is not a violent criminal or a dangerous man. The offense conduct in this case demonstrates that he was just a low-level street dealer, dealing drugs to support his family and his own drug habit. He made three small sales to an undercover agent and was arrested, peacefully, in possession of drugs, completely consistent with his low-level behavior. Unfortunately, his relatively limited prior offenses qualify him as a career offender and place him at the top of the guidelines. That "qualification" grossly overstates the likelihood of recidivism in this case.

Although Mr. Martinez does have one prior in which a person was injured, that conviction occurred more than 15 years ago and the three-year sentence that he received for that conviction indicates the extenuating circumstances surrounding that event. Since

SENTENCING MEMORANDUM

that conviction, Mr. Martinez has not been involved in any type of violent activity. In fact, in the possession conviction that led to his federal supervised release, Mr. Martinez was arrested attempting to run from a confrontation with the police. There were no allegations that he engaged in any threatening behavior.

Certainly, Mr. Martinez has a history of drug and alcohol use, and an arrest pattern that is consistent with that lifestyle. With one 15-year-old exception, however, his crimes have not endangered anyone else and have all been linked to his drug use. Unfortunately, following his last conviction, he did not have the opportunity to participate in drug treatment and soon after his release, relapsed into problems with drug and alcohol. The likelihood of those problems continuing can be addressed by a recommendation that Mr. Martinez participate in the RDAP program while in custody. Drug treatment, and ten years of maturity, provide a real hope that this will be the last time Mr. Martinez stands before this, or any other, court.

This case is a good example of the problems which result from an aggregative sentencing system and demonstrates why the downward departure is needed. When this case was in state court, there was a half time 8-year offer on the table, and Martinez's experienced state court lawyer, V. Roy Lefcourt, thought he would get a better deal. Instead, Mr. Martinez was swept up *as a buyer* in a Federal wiretap investigation of his source. That wiretap is useful, however, because it reveals only actions consistent with Mr. Martinez's low place in the drug business. He made three small sales. This is not a man engaged in large drug transactions. If a downward departure is not granted, the final

SENTENCING MEMORANDUM

sentence will be grossly disproportionate to the conduct and criminal history involved.[3]

In <u>United States v. Sanchez-Rodriguez</u>, 161 F.3d 556 (9th Cir. 1998), the Ninth Circuit specifically recognized that the minor nature of the current offense and the minimal qualifications as a career offender may qualify a defendant for a downward departure. In that case, over strenuous government objection, Judge Illston departed from a guideline sentence of 77 to 96 months to a 30-month sentence. In this case, we are asking for a far smaller departure and the government has agreed to a sentence in the range we are requesting.

This recommendation by the government is important because the Ninth Circuit recognized and approved in <u>United States v. Camarillo-Tello</u>, 236 F.3d 1024 (9th Cir. 2001), plea bargains that include a specific downward departure recommendation. Although there is no specific recommendation for a downward departure here, the government has specifically approved a sentence range beginning at ten years. The governmental approval of that range also makes a downward departure in this case appropriate.

The guidelines themselves authorize downward departure "where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3. As calculated, the criminal history calculation

---

[3] In <u>Nichols v. United States</u>, 511 U.S. 738 (1994) (J. Souter, concurring), Justice Souter again emphasized that downward departures are appropriate when a defendant's criminal record over-represents either the seriousness of his past conduct or the likelihood of recidivism.

SENTENCING MEMORANDUM

grossly over-represents Mr. Martinez's potential for recidivism.

In <u>Booker</u>, the Supreme Court held that district courts must consider the guideline range as advisory, not mandatory, and that they must also consider the other directives set forth in 18 U.S.C. § 3553(a). <u>Id.</u> at 764-65.

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

> (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");
>
> (b) deterrence;
>
> (c) incapacitation ("to protect the public from further crimes"); and
>
> (d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." That tenet instructs "district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." <u>United States v. Rodriguez</u>, 527 F.3d 221 (1st Cir. 2008) (citing <u>Kimbrough</u>, 128 S.Ct. at 570). The parsimony provision is not just another factor to be considered along with the others set forth in Section 3553(a); it sets an independent limit on the sentence a court may impose.

SENTENCING MEMORANDUM

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the Court should consider several factors listed in Section 3553(a). These are:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the kinds of sentences available;"

(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4) the need to avoid unwarranted sentencing disparity; and

(5) the need to provide restitution where applicable.

Neither the statute itself nor Booker suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

Here, all of the Section 3553 factors call out for a sentence at the bottom of the negotiated range and outside of the guidelines, or ten years. Even a ten-year sentence, however, is too much in this case.

These are nonviolent crimes which occurred when Jose Martinez had relapsed into drug use and were motivated by a misguided desire to take care of his family, only after Martinez had exhausted many other avenues of employment. A ten-year sentence is a huge punishment and, compared to the effective length of the offer in the state court,

SENTENCING MEMORANDUM

which is a reasonable approximation of what the community believes is an appropriate sentence for the nonviolent crime charged here. A ten-year sentence is almost 250% greater than what Alameda County thought was appropriate in this case.

If the random nature and length of sentences are in fact deterrents, this vast difference between the proposed state sentence and the serendipitous federal sentence here will deter both Mr. Martinez and anyone who learns of his fate. Mr. Martinez will be away from the lives of his children for ten years. That is more than enough time to think about his mistake.

There is no need to make restitution here. Mr. Martinez neither harmed anyone nor took something from someone. He sold drugs to an undercover agent on three separate occasions and was paid less than $1200.00. His profit would be some small fraction of that. The government got what it paid for. Mr. Martinez is receiving far more than his due.

Finally, the length of the sentence in this case indicates that the likelihood of recidivism will be reduced. The Parole Commission has long recognized that many criminal offenders eventually "burn out" as the aging process catches up with them. In recognition of this factor, the Parole Commission recomputed the parole eligibility of older, parole-eligible inmates. In a 1984 study by the Commission's Research Office entitled "Burnout-Age At Release From Prison and Recidivism," it was found that recidivism rates do decline with increased age. Federal Register, Vol. 60, No. 69, 18378. Upon his release, Mr. Martinez will be in his forties and, while that is an age counsel views

SENTENCING MEMORANDUM

as the prime of life, statistics show that crimes, particularly drug crimes, decline with age.

## III. CONCLUSION

Mr. Martinez is obviously a flawed man and has wasted large portions of his life. As the Court can tell from the letters that the people who know him best, however, he has not been a total failure. He has tried to help others and remain in contact with his children. While he is far from a perfect role model, he has done what he can to improve the lives of those around him, and those individuals have expressed their support with letters to the Court. A sentence of more than ten years will serve no additional purpose and will charge society the costs of warehousing a human being for an additional six years. Accordingly, a ten-year sentence, the bottom of the range agreed to by the parties, is an appropriate sentence in this case. No more time is needed to deter, incapacitate, send a message to the community and give Mr. Martinez time to grow into middle age.

Date:  July 18, 2008                    Respectfully submitted:

                                             /s/Christopher Cannon
                                            Christopher J. Cannon
                                            Attorney for Jose Jesus Martinez

SENTENCING MEMORANDUM

## PROOF OF SERVICE BY MAIL

I, the undersigned, declare:

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 years and not a party to the within action; my business address is 44 Montgomery Street, Suite 2080, San Francisco, California 94104.

On July 18, 2008, I served the within:

## SENTENCING MEMORANDUM

on the parties in said cause, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California, addressed as follows:

Daniel Kaleba
United States Attorney's Office
1301 Clay Street, Suite 340S
Oakland, CA 94612

I declare under the penalty of perjury that the foregoing is true and correct, and that this declaration was executed on July 18, 2008, at San Francisco, California.

_____
Elisa Lee

SENTENCING MEMORANDUM